How to the argument in Kirkman v. Thompson Ms. Horne, I hope you're not going to read all of those during the argument. I am not, Your Honor. Alex Ward Nor do I think we have any issues about recalcitrance or jurisdiction here. Yes. Not that I know of. Good morning, Your Honor. May it please the Court. My name is Gail Horne, and I represent the appellant Albert Kirkman in this matter. Mr. Kirkman has alleged that he was wrongfully convicted of a double murder and attempt to murder that he did not commit. The sole evidence against him at his trial was the testimony of the surviving victim, Willie Johnson. This case actually starts and it stops with Mr. Johnson. There was no physical evidence connecting Mr. Kirkman to the crime. There were no other witnesses connecting Mr. Kirkman to the crime. Ms. Horne, time is short, and I wonder if you can be persuaded to address the language of 2254d, saying that to have a claim, one must show that the state court has acted out of step with the decisions of the Supreme Court of the United States. Your fundamental argument is that Kirkman is innocent, and the Supreme Court in Herrera said that's not an independent claim. Is there any place where the Supreme Court has treated innocence as an independent claim? Well, Your Honor, I think that we actually made two separate claims. There is certainly an actual innocence claim, and I will concede that the Supreme Court has left the question open as to whether or not that's a cognizable claim in federal habeas. But what we've argued is that this circuit's jurisprudence in Coogan v. McCautry— I hate to break this to you, but I know this is hard for you to grasp. It's hard for us sometimes. We are not the Supreme Court of the United States. Every once in a while, a court of appeals relies on its own cases when issuing collateral relief. And what happens is summary reversal, in which the Supreme Court says, you can't do that. It's actually been increasingly loud and impolite in recent years when making that point. I want to know what decisions of the Supreme Court clearly establish the propositions on which you are relying. Well, Your Honor, as we discussed in our reply brief, we believe that the Supreme Court's decision in Messaroch v. the United States, which is a 1956 case, directly address and dictate the decision in Coogan. And what Messaroch says is something different from actual innocence. In Messaroch, the court expressly said it wasn't passing on the innocence of the defendants that were before the court. What it said instead was it was discussing the integrity of the criminal process. I think that's a near quote from the opinion itself. And the facts of Messaroch are very similar to the facts in this case. In Messaroch, there was a government witness who had provided testimony at trial. Subsequent to the trial, the government witness started saying things that were either subjectively not believable or objectively proven to be untrue. The government brought that before the court and said, let's have a credibility hearing to determine whether or not this witness on whom these defendants' convictions rested is reliable. And the Supreme Court said no, that you can't have a criminal conviction based on tainted testimony. Was Messaroch decided on constitutional grounds or supervisory grounds on direct appeal? The express provision or the express language of Messaroch is certainly on the Supreme Court's supervisory authority over the lower federal courts. But the language and the discussion in Messaroch directly applies here, and it has been cited and interpreted to apply more broadly. I would submit that the mechanism by which Messaroch was decided, that the court said it had supervisory— So in your view, then, statements like the one in Herrera are simply wrong because the Supreme Court has misinterpreted its own decisions? When Herrera says claims of actual innocence based on newly discovered evidence have never been held as stated ground for federal habeas relief, you think it's simply wrong. But it is what the justices said. Your Honor, I think that the claim in front of Herrera— Well, as a general matter, I think Herrera has been interpreted not to say that claims of actual innocence are foreclosed, but that it is an open question. I believe the McQuiggan case that we cited in our brief says as much. What I think differentiates Herrera and the Herrera line of cases from Messaroch is what Messaroch says is— I think the quote is, the decision herein passes only on the integrity of a criminal trial in the federal courts. It does not determine the guilt or innocence of the petitioners. And so I think the concern that's articulated in Messaroch is different from what was discussed in Herrera because what Messaroch is discussing is the integrity of the criminal procedure, the administration of justice. And what Messaroch says is— I have some difficulty understanding the problem with the integrity of the trial. You're not asserting here that at the time of the trial, the prosecutors themselves believed that Johnson was lying, are you? No, Your Honor, we're not. Right. He recanted afterwards. So what was wrong with the trial? Well, Your Honor, I think that that does actually parallel the Messaroch case. The government was saying in Messaroch, we don't think this informant was lying at trial. We think that he had a psychotic break subsequent to trial, and as a result of that psychotic break, gave unbelievable testimony in other proceedings. What we're arguing here is that Mr. Johnson lied at trial. He's admitted he lied at trial. Well, that sounds like you think Herrera misunderstood the role of actual innocence. Well, Your Honor, what we're saying is that Mr. Johnson actually—he has admitted he lied at trial. He was subsequently convicted, charged— and was telling the truth at trial. These recantations are always very difficult, but I'm having trouble with the fact that it is clearly established as a matter of federal constitutional law that a recanting witness makes the outcome of the trial a violation of the federal constitution. Well, Your Honor, I would—again, I recognize that this is not satisfactory, but I think that Herrera certainly stands for what it stands for, and our interpretation of Herrera is that it has left the question open. Herrera specifically with regard to— Look, leaving a question open means it's open. Not that it's been clearly established by the Supreme Court that you win, but that, well, it's open. And I understand that, Your Honor, but I believe that Mesorosh is still good law that would govern the decision in this case. Well, I won't go through this again, but if you're right about Mesorosh, then Herrera just misunderstood the law, and you want us to write an opinion saying, well, we see what you said in Herrera. You're wrong. We're doing something else. Indeed, it's clearly established that you're wrong, and therefore the standards of 2254-D1 have been met. That looks like an invitation to be summarily reversed, just an engraved invitation. Well, Your Honor, I believe that Kugin survived Herrera. Kugin has been since cited— It's not a decision of the Supreme Court. It counts for nothing. I understand that it's not a decision of the Supreme Court, but I think it's emblematic of the fact that there is a distinction between an independent due process violation that occurs when evidence is so compelling, evidence like that presented in Mesorosh and evidence like that presented in this case, versus an actual innocence claim that Herrera discussed. I guess I've got a very basic question for you, Ms. Warren, which is why do you satisfy— even if—put aside the D1 questions about Supreme Court law. How do you satisfy the D2 problem with respect to the state court's credibility findings here? I mean, this just seems to me a totally intractable credibility problem, a difficult one for the trial judge in the first instance, but very, very difficult to set aside even on direct review. Well, Your Honor, I think that obviously 2254E1 gives great deference— Sorry, E1, sorry. —gives great deference to the presumptions and the findings of fact made by the state court, but it's not as if that forecloses relief. And I think in this case there were a number of ways in which the state courts made their credibility finding that are not proper and make it objectively unreasonable. I think the first one is that much of its opinion hinged on speculation. We tell juries all the time you can't make a decision in this case based on speculation, sympathy, bias, prejudice. In this case, what the court did was make its determination that this entire recantation by Mr. Johnson must have been motivated by gangs, by some kind of gang connection. There was no actual evidence of that in the record, and if there were any disputes that there was no evidence, the court itself, the circuit court, made that clear by saying, I have no idea why the vice lords through Willie Johnson would urge this recantation. And the reason was there was just no proof of it. There was no evidence that any of these individuals 20 years after the fact were still in a gang, no evidence that Willie Johnson harbored some resentment towards Keith Ford, no evidence that there was some vendetta. All there was was a phone call that he made to somebody he trusted who happened to be in a gang, and who said to him, tell the truth. If you know this, go ahead and tell the truth. And if you make a credibility finding, I would argue that was one of the centerpieces of the state court's credibility findings. If you make a credibility finding based on speculation, that is objectively unreasonable. Similarly, the court focused on this trivial facts, took collateral impeachment, and again made it the centerpiece of its credibility determination. The court said, it's very inconsistent that Mr. Johnson said he received threats in the emergency room, and we know that there was no phone in the emergency room. Well, the issue of the threats was sort of where they occurred was a bit of a red herring, I would submit,  Earlier in the day, Keith Ford had threatened him and said, you better watch it if you're hanging around with Cedric Heron. It's dangerous to be hanging around with Cedric Heron. Keith Ford lived on the same block as Willie Johnson. He knew he was dangerous. He knew he was a gang leader. By contrast, my client and his co-defendant were what were called neutrons in the neighborhood. They were nobodies, nobody to be afraid of. So it didn't matter whether Mr. Johnson got threats right when he got into the emergency room versus threats once he got into the hospital room, and there was no dispute that he was receiving threats because he already knew to be afraid of Mr. Ford. He knew that he couldn't protect his family against Mr. Ford, but he could protect his family against these neutrons, Mr. Kirkman and Mr. Cowell. So that's another way that the court's credibility determination was not reasonable. It took these collateral matters and made them into something bigger than what they were. Of course there was going to be impeachment on Willie Johnson. He's testifying 19 years after the fact. Nobody is going to give perfect testimony. But what the court was supposed to do was focus on the consistency and the substance of what he was saying rather than these trivial matters. The last way I think his credibility determination was objectively unreasonable was his failure to try to reconcile the testimony that was given. And the way this comes up is he says, again, Mr. Johnson was so inconsistent. He said he didn't want to put Keith Ford's name in it because he was worried of what Mr. Ford could do, and at the same time he wanted to go ahead and take care of it on the streets. And the court said, those are just, I can't reconcile those two things. But the court actually could reconcile them because they were clearly reconcilable. What Mr. Johnson said and which was corroborated by Latrice Buford, his then-girlfriend, was that in my decompensated state, I didn't want to pin this on Keith Ford. I couldn't protect my family. My friends had just been killed. I didn't know what he would do, so I kept his name out of it. Once I was better, as he confessed to Ms. Buford a couple of months after the murder, I knew where he played ball, I knew where he was, and I wanted to take care of it on my own. So these things, again, were clearly reconcilable, but the court chose to see them as conflicting. The court also said that Mr. Johnson had no care in the world for the fact that he was giving testimony against his interests. Well, that's obviously not true. He was ultimately charged with perjury. He did the only thing he could do, which is plead guilty at that point. He served time in the penitentiary before his sentence was commuted. Ms. Horne, before your time runs out, I want to take you back to Meserach. Yes, sir. One of the nice things about having a computer on the bench is that you can download it, and I've just searched Meserach. The word constitution does not appear in it. It appears in Justice Frankfurter's dissenting opinion, but not in the court's opinion. Is there some later case in which the Supreme Court has treated Meserach as a constitutional holding? Not that I'm aware of, Your Honor. Okay. Thank you very much. Ms. O'Connell. May it please the court? I'm Erin O'Connell on behalf of the respondent warden. The court should deny habeas relief because there is no basis for a constitutional claim. For a claim of innocence or for a claim that presentation of perjured testimony violates due process in the absence of some showing that the prosecutor was aware at the time that the testimony was false. This court is not even acting on a fresh slate with respect to those issues of what the clearly established law is. This court has repeatedly held that a standalone claim of innocence is not cognizable. It's also held in Johnson v. Bett that you have to show that the prosecutor was aware of the alleged falsity. These cases foreclose any relief for a petitioner. Even if there were an argument to be made that the court should take the opportunity to try to articulate a new basis for habeas relief, this case is not the case to do it because the state court made a dispositive credibility determination that petitioner cannot overcome on this record. I did want to refer the court to one key I think dispute between the parties and one key basis for disbelieving the recantation, and that is the fact that the evidence clearly shows that Johnson, while he was awaiting surgery in the emergency room, plainly and unequivocally identified petitioner as one of the two shooters. He identified him by name, Duke. But of course he may have been lying, right? That's the problem. He was lying at one time or the other. Correct. And the fact that he told consistent lies at one time doesn't tell us which of the two principal times he has been dissembling. It undercuts his entire explanation for how he came to falsely implicate petitioner, that he did in his moments of severe pain and medical emergency of nine gunshot wounds, say to police in those few moments, Duke is the one that shot me. He said his name is Duke. He said this is what his car looks like. This is about where he lives. He hangs out with Keith Ford. The testimony of John Knee. These all sound like arguments you make to a jury or to the state judge in deciding which one was right and which one was wrong. Here in the Court of Appeals where we're dealing with legal issues, I don't see that they carry any weight. Petitioner plainly cannot show that the state court's resolution of the credibility issue was unreasonable, which is a showing that he needs to make under D-2 to obtain habeas relief on this claim. And this court would defer to a district court's determination on credibility, but it even more so on federal habeas review has to defer to any reasonable interpretation of the record made by the state courts. And petitioner has not met his burden here of showing that that was an unreasonable determination of fact. So because the claim fails both on that factual ground and on all the legal grounds that there is no recognized claim here, the court should affirm denial of habeas relief. Thank you. Carry on. Okay. Thank you very much. Ms. Horne, your time has expired and the case is taken under advisement.